# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------X
OPPENHEIMER & CO. INC.,

         Plaintiff,

   -against-

DOCULYNX, INC., as successor-in-interest to
ANACOMP, INC.,

         Defendant.
------------------------------------------------------------X

Index No: _____

Date of Purchase: 8/4/17

Plaintiff designates New York County as the place of trial.

The basis of venue is Plaintiff's principal place of business.

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer upon plaintiff's attorneys, within 20 days after the service of this summons, exclusive of the day of service or within 30 days after the service is complete if the summons is not personally delivered to you within the State of New York, and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint herein.

Dated:  New York, New York
    August 4, 2017

            SATTERLEE STEPHENS LLP

            By: _____
            Michael J. McAllister
            Michael H. Gibson
            John I Coster, IV
            230 Park Avenue, Suite 1130
            New York, New York 10169
            (212) 818-9200
            *Attorneys for Plaintiff*

1565991_1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

OPPENHEIMER & CO. INC.,

                        Plaintiff,

- against -

DOCULYNX, INC., as successor-in-interest to ANACOMP, INC.,

                        Defendant.

Index No.:

**COMPLAINT**

Oppenheimer & Co. Inc. ("Oppenheimer") by and through its attorneys, Satterlee Stephens, LLP, as and for its Complaint against Defendant DocuLynx, Inc., as successor-in-interest to Anacomp, Inc. ("DocuLynx"), alleges as follows:

### PRELIMINARY STATEMENT

1. By this action, Oppenheimer seeks a permanent injunction mandating Defendant DocuLynx to return Oppenheimer's Property to it and to recover damages from arising out of DocuLynx's wrongful and unlawful refusal to return certain books, records, images, data and reports belonging to Oppenheimer ("Oppenheimer Property"). DocuLynx's conduct constitutes a breach of its written agreements with Oppenheimer and a conversion of Oppenheimer's property.

### PARTIES

2. Plaintiff Oppenheimer is a corporation organized and existing pursuant to the laws of the State of New York and maintains its principal place of business at 85 Broad Street, New York, New York 10004.

1

2777047_1

3.     Upon information and belief, Defendant DocuLynx is a corporation organized and existing pursuant to the laws of the State of Nebraska and maintains its principal place of business at 6916 N. 97th Circle, Omaha, Nebraska 68122.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Defendant DocuLynx pursuant to CPLR § 301 and 302(a), as DocuLynx transacts business in New York.

5.     Venue in New York County is proper pursuant to CPLR § 503(c) as Plaintiff Oppenheimer maintains its principal office in New York County.

## BACKGROUND

6.     Oppenheimer is a Securities and Exchange Commission ("SEC") and Financial Industry Regulatory Authority, Inc. ("FINRA") regulated broker/dealer. As such, Oppenheimer is subject to regulations regarding the preservation of confidential documents regarding Oppenheimer's customers, including, but not limited to, SEC Rule 17a-4.

7.     Upon information and belief, Defendant DocuLynx is a data imaging vendor that serves as an information management, information governance, and records management solutions provider.

8.     In or about December of 2000, Oppenheimer began utilizing DocuLynx (through its predecessor, Anacomp, Inc. ("Anacomp")) as its data imaging vendor. Under the parties' agreement, Oppenheimer would deliver Oppenheimer Property to Anacomp (and subsequently DocuLynx), who would in turn image the hardcopy documents and store the resulting data.

9. On or about December 4, 2000, Oppenheimer and Anacomp entered into a Master Agreement for Data Imaging Service (the "Master Agreement").[1] A copy of the Master Agreement is annexed hereto as Exhibit A.

10. The Master Agreement provided that Anacomp would be the exclusive data imaging provider for Oppenheimer during the contract term. To this end, the Master Agreement provides:

> [Oppenheimer] acknowledges that this is a requirements contract, and that [Oppenheimer] may not perform any of the Services itself or purchase any such Services from others during the term of this Agreement.

*See* Master Agreement, Exhibit A annexed hereto at ¶ 1.

11. The Master Agreement also contained a "Confidentiality" section which provided that:

> Anacomp will utilize commercially reasonable efforts in safeguarding [Oppenheimer's] information and data. Anacomp agrees not to divulge or disclose to third parties, or make any use whatsoever, of [Oppenheimer's] information and data provided to Anacomp unless required by law. Anacomp shall be liable to [Oppenheimer] for a negligent or willful breach of the foregoing obligation.

*Id.* at ¶ 6.

12. The Master Agreement also contained a "Default" section which provided that:

> If either party is in material default under this Agreement and such default continues for thirty (30) days after written notice thereof by the other party, then this Agreement may thereupon be terminated by such other party; provided however, that if [Oppenheimer] fails to pay any amount promptly when due, Anacomp...may at its election and without notice: (i) terminate this Agreement; (ii) suspend performance of this Agreement until the invoice is paid; and/or (iii) declare any unpaid balances immediately due.

---

[1] The Master Agreement was entered into by Oppenheimer's predecessor, Fahnestock & Company, Inc.

3

*Id.* at ¶ 9.

13. Notably, nothing in the "Default" section of the Master Agreement, any other section of the Master Agreement, or any other written agreement between the parties authorizes DocuLynx to refuse to return Oppenheimer Property upon demand from Oppenheimer. Quite the opposite, DocuLynx's subsequent agreement with Oppenheimer expressly provides that, in the event of a termination, DocuLynx will unconditionally return all Oppenheimer Property.

14. On or about July 28, 2010, Anacomp notified Oppenheimer of the impending sale of Anacomp's assets to DocuLynx and requested that Oppenheimer consent to the assignment of the Master Agreement to DocuLynx. On August 6, 2010, Oppenheimer consented to the assignment of the Master Agreement from Anacomp to DocuLynx. A copy of Anacomp's July 28, 2010 letter and Oppenheimer's August 6, 2010 consent to assignment is annexed hereto as Exhibit B.

15. In August 2010, prior to the effective date of the assignment, Oppenheimer and Anacomp entered into an "Amendment to Master Agreement for Data Imaging Services" (the "Amended Agreement"). A copy of the Amended Agreement is annexed hereto as Exhibit C.

16. The Amended Agreement provided that the term of the parties' Master Agreement (which previously had been renewed on an annual basis) would terminate on July 31, 2011. *See* Amended Agreement, Exhibit C annexed hereto.

17. The Amended Agreement clearly provided that:

> Upon any termination whatsoever, the Company shall terminate the provision of any products and/or services *and return all images, data and reports that were provided pursuant to the [Master Agreement] to [Oppenheimer] without any "deconversion fees" (as such concept is commonly understood) or liability of any kind.*

4

2777047_1

*See* Amended Agreement, Exhibit C annexed hereto (emphasis added).

18. Following the expiration of the Amended Agreement on July 1, 2011, DocuLynx continued to provide services under the Master Agreement and the Amended Agreement to Oppenheimer on a month-to-month basis. To this end, DocuLynx invoiced Oppenheimer for services on a monthly basis and Oppenheimer paid said invoices.

19. The month-to-month provision of services by DocuLynx and payment of invoices by Oppenheimer continued without objection by either party until in or about the Spring of 2017, when DocuLynx advised Oppenheimer that it desired to change its pricing arrangement with Oppenheimer (under which the parties had operated under for over seventeen years). To this end, DocuLynx offered Oppenheimer a proposal which provided for services under an annual license fee of $806,000. Oppenheimer declined the DocuLynx proposal, and DocuLynx continued to provide services to Oppenheimer through the Spring and into the Summer at the previously agreed fee.

20. On July 27, 2017, Jim McDonald, DocuLynx's Senior Vice President of Professional Services, sent an email to Oppenheimer taking the position that the parties' agreement had terminated effective July 1, 2017, and that if Oppenheimer desired to proceed on an annual license basis, the cost would be $806,000 annually. Mr. McDonald further warned that, absent payment in the sum of $806,000 (for a prospective 1 year license) by August 4, 2017, Oppenheimer's access to the software may be suspended.

21. Oppenheimer responded to Mr. McDonald's email and advised DocuLynx that Oppenheimer did not intend to renew its agreement under the terms proposed by DocuLynx. Oppenheimer further reminded DocuLynx of the provision within the Amended Agreement

5

2777047_1

whereby DocuLynx was required to return all Oppenheimer Property, upon termination of the agreement.

22. Over the next several days, Oppenheimer, on multiple occasions, demanded that DocuLynx immediately return all Oppenheimer Property, as it was expressly obligated to do under the Amended Agreement.

23. Indeed, during one such telephone call between Oppenheimer and DocuLynx, Mr. McDonald acknowledged DocuLynx's obligation to immediately return Oppenheimer Property.

24. Despite the above referenced communications and acknowledgment by DocuLynx, DocuLynx has refused to return Oppenheimer's Property.

25. Even more egregious, DocuLynx has openly and in writing attempted to blackmail Oppenheimer into entering into a new lucrative contract with DocuLynx by utilizing the Oppenheimer Property which it is holding hostage, as well as the potential regulatory ramifications which Oppenheimer faces as a result of DocuLynx refusal to return the Oppenheimer Property, as leverage.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

26. Oppenheimer repeats and realleges each and every allegation set forth within Paragraphs 1 through 25 of this Complaint as if set forth in full herein.

27. Pursuant to the Master Agreement and Amended Agreement, Defendant DocuLynx is required to return Oppenheimer Property upon demand from Oppenheimer, and furthermore, in the event of a termination, DocuLynx is required to unconditionally return all Oppenheimer Property.

28. Oppenheimer has performed its obligations under the Master Agreement and Amended Agreement.

29. DocuLynx has breached the Master Agreement and Amended Agreement by, among other things, refusing to return Oppenheimer's Property despite due demand.

30. Oppenheimer has been damaged as a result of DocuLynx's breach of the Master Agreement and Amended Agreement in an amount to be determined at trial.

## COUNT II
### (Conversion)

31. Plaintiff Oppenheimer repeats and realleges each and every allegation set forth within Paragraphs 1 through 30 of the Complaint as if set forth in full herein.

32. DocuLynx has wrongfully refused to return the Oppenheimer Property, to which it has no legal entitlement, and has therefore wrongfully converted the property of Oppenheimer.

33. As a result of Defendant DocuLynx's wrongful conversion of the Oppenheimer Property, Oppenheimer has been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff Oppenheimer & Co. Inc. demands judgement against Defendant DocuLynx, Inc., as successor-in-interest to Anacomp, Inc. as follows:

(i) Ordering Defendant DocuLynx to immediately return the Oppenheimer Property to Plaintiff Oppenheimer;

(ii) On Plaintiff's First Count against Defendant DocuLynx for Breach of Contract for an amount to be determined at trial;

(iii) On Plaintiff's Second Count against Defendant for Conversion for an amount to be determined at trial;

(iv) Awarding Plaintiff recovery of its costs associated with this action, including but not limited to reasonable attorneys' fees; and

(v) Awarding Plaintiff such further relief as this Court deems just and proper.

Dated: New York, New York
August 4, 2017

SATTERLEE STEPHENS LLP

By: _____
Michael J. McAllister
Michael H. Gibson
John I. Coster IV
230 Park Avenue, 11th Floor
New York, New York 10169
(212) 818-9200
*Attorneys for Plaintiff Oppenheimer & Co. Inc.*

8

2777047_1